```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,                        :
                                                 :    **MEMORANDUM & ORDER**
            v.                                   :    17-CR-27 (WFK)
                                                 :
TITO ALDEMAR RUANO YANDUN,                       :
                                                 :
                        Defendant.               :
-----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge**:

On March 20, 2024, Defendant pled guilty to the sole count of an Indictment, charging him with International Cocaine Distribution Conspiracy, in violation of 21 U.S.C. §§ 959(a), 959(d), 960(a)(3), 960(b)(1)(B)(ii), and 963. Plea Agreement ¶ 1, ECF No. 59; *see also* Indictment ¶ 1, ECF No. 1. The Indictment also contains a criminal forfeiture allegation. Indictment ¶¶ 2-3. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 240 months of imprisonment followed by five years of supervised release with both standard and special conditions. Forfeiture is ordered in accordance with the Order of Forfeiture. ECF No. 61. The Court also orders a $100.00 mandatory special assessment.

## I. Background

The Drug Enforcement Administration ("DEA") led the investigation into the instant offense. Presentence Investigation Report ("PSR") ¶ 3, ECF No. 62. The investigation revealed Defendant was the leader of a drug trafficking organization ("DTO") based in Colombia that trafficked multi-hundred-kilogram loads of cocaine from Colombia to the United States via various Central American intermediary countries between 2015 and 2016. *Id.* ¶¶ 4, 6. The DTO sourced the cocaine from the Revolutionary Armed Forces of Colombia ("the FARC"), a violent, anti-government paramilitary group. *Id.* ¶ 8. Defendant, as a leader of the DTO, directly communicated with senior members of the FARC and coordinated the maritime shipments of cocaine. *Id.* ¶ 8. Also because of his leadership position, Defendant was entitled to an ownership stake in 50 kilograms of cocaine per load, a significant portion of the approximately 500 to 600 kilograms comprising each load. *Id.* Between 2015 and 2016, the Ecuadorian Coast

Guard, the United States Coast Guard, and the Colombian Navy intercepted the DTO's boats and seized large quantities of cocaine. *Id.* ¶¶ 11-22.

On January 20, 2017, the Government filed a single-count Indictment charging Defendant with International Cocaine Distribution Conspiracy, in violation of 21 U.S.C. §§ 959(a), 959(d), 960(a)(3), 960(b)(1)(B)(ii), and 963. Indictment ¶ 1, ECF No. 1. The Indictment also contains a criminal forfeiture allegation. *Id.* ¶¶ 2-3.

On October 19, 2017, Defendant was arrested in Colombia pursuant to the Indictment. Government Sentencing Memorandum ("Gov't Mem.") at 3, ECF No. 70; *see also* PSR ¶ 26. For the next six years, Defendant was involved in lengthy legal proceedings in Colombia regarding his eligibility for non-extradition under Colombian law. PSR ¶ 26; Gov't Mem. at 2; Defense Sentencing Memorandum ("Def. Mem.") at 2, ECF No. 66.

On October 25, 2023, Defendant was extradited to the United States. PSR ¶ 26.

On March 20, 2024, Defendant pled guilty to the sole count of the Indictment. Plea Agreement ¶ 1, ECF No. 59. As part of his plea agreement, Defendant stipulated and agreed, for Guidelines calculation purposes, that (1) he was an organizer or leader of a criminal activity involving five or more participants, and (2) he is accountable for at least 20,000 kilograms of cocaine. *Id.* ¶ 2. Defendant also agreed, as part of his plea agreement, not to appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment at or below 365 months. *Id.* ¶ 4.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court

chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

Defendant was born on October 28, 1975 in Ipiales, Nariño, Colombia. PSR ¶ 50. Defendant's parents and three siblings remain in Nariño today. *Id.* ¶ 51. They are all aware of the instant offense and remain supportive of Defendant. *Id.* ¶¶ 50-51.

Defendant grew up in extreme poverty, living in a two-room adobe house without running water or electricity. *Id.* ¶ 52. Defendant's father, who suffers from alcohol addiction, was abusive towards Defendant, his siblings, and his mother. *Id.* Because Defendant's father spent all spare money on alcohol, there were times when the rest of the family could not even

afford food. *Id.* In order to provide for his family, Defendant began working as a farm laborer when he was eight years old. *Id.* At age 13, he left home to work as a rancher in an effort to earn more money to send back to his mother. *Id.*

Defendant began working with FARC members after leaving his family home. *Id.* ¶ 53. Defense counsel explains Defendant's association with the FARC began when he started working as a rancher because the farmer who employed him, who he viewed as his mentor, was called on to run errands for the FARC. Defense Sentencing Memorandum ("Def. Mem.") at 4, ECF No. 66. While Defendant was never a full-fledged FARC member, PSR ¶ 53, defense counsel asserts Defendant was asked to become more involved in the farmer's errands for the FARC as Defendant matured, Def. Mem. at 4. Defense counsel acknowledges Defendant was recruited into the charged conspiracy at a young age but argues there was never much of a choice with a violent guerrilla group like the FARC that employs brutal intimidation tactics to achieve its objectives. *Id.*

Although Defendant never married, he has seven children, all of whom reside in Colombia. PSR ¶¶ 54-57. Approximately nine years ago, Defendant began a relationship with his current partner, who was twenty-four-years-old as of the writing of the PSR. *Id.* ¶ 57. Defendant was introduced to his current partner through his partner's father. *Id.* Defendant and his partner have three children together, the eldest of whom is 11 years old. *Id.* Defendant's partner is aware of the instant offense and remains supportive. *Id.* Upon his release, Defendant intends to return to Colombia to live with his partner and their children. *Id.* ¶ 58.

    2.    Educational and Employment History

4

While in custody in Colombia, Defendant earned his high school diploma. *Id.* ¶ 64. As one of the first people to obtain a diploma through this prison program, Defendant became a promoter of the program and encouraged other incarcerated individuals to enroll. *Id.*

Between 1981 and 2017, Defendant worked as an agricultural worker, first as a laborer and then as a cooperative owner. *Id.* ¶ 67. Defendant also served as a marine in the Colombian military for 18 months beginning in 1994. *Id.* ¶ 69.

### 3. Prior Convictions

Defendant has no prior convictions. PSR ¶¶ 43-45.

### 4. Physical and Mental Health

Defendant has high blood pressure but is otherwise physically healthy. *Id.* ¶ 61. Defendant reported no mental health issues. *Id.* ¶ 62.

### 5. Substance Abuse

Defendant, who is a self-proclaimed alcoholic, has been sober for 24 years. *Id.* ¶ 63. Defendant reported smoking marijuana for approximately three years, but otherwise has no history of substance use. *Id.*

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

## B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense. Defendant led a Colombia-based international drug trafficking organization that was responsible for the importation of thousands of kilograms of cocaine, a dangerous controlled substance, into the United States. *See supra* Part I. Indeed, Defendant himself is accountable for at least 20,000 kilograms of cocaine. Plea Agreement ¶ 2; PSR ¶ 8. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Indictment, charging him with International Cocaine Distribution Conspiracy, in violation of 21 U.S.C. §§ 959(a), 959(d), 960(a)(3), 960(b)(1)(B)(ii), and 963. Plea Agreement ¶ 1; *see also* Indictment ¶ 1. This offense carries a minimum term of imprisonment of ten years and a maximum term of imprisonment of life. 21 U.S.C. §§ 963, 960(b)(1)(B)(ii). Defendant faces a minimum term of supervised release of five years. 21 U.S.C. § 960(b)(1)(B). If a condition of release is violated, Defendant may be sentenced to up to five years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 18 U.S.C. § 3583(e). Defendant is ineligible for probation because it is expressly precluded by statute. 21 U.S.C. § 960(b)(1)(B).

Defendant faces a maximum fine in the amount of $10,000,000.00, 18 U.S.C. § 3571(b)(3), although Defendant appears unable to pay such a fine, PSR ¶ 73. Defendant also

6

faces a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013. Finally, Defendant faces forfeiture as outlined in the Order of Forfeiture. ECF No. 61.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 21 U.S.C. § 963, as contained in the sole count of the Indictment, is U.S.S.G. §2D1.1(a)(5). Because Defendant is accountable for at least 20,000 kilograms of cocaine, his base offense level is 38. U.S.S.G. §2D1.1(c)(1); *see also* Plea Agreement ¶ 2. Pursuant to U.S.S.G. §3B1.1, four levels are added because Defendant was a leader or organizer of a criminal activity that involved five or more participants. Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. All parties agree with these portions of Defendant's Guidelines calculations. PSR ¶¶ 31, 36, 40-41; Gov't Sentencing Memorandum ("Gov't Mem.") at 3-4, ECF No. 70; Defense Sentencing Memorandum ("Def. Mem.") at 2, ECF No. 66; *see also* Plea Agreement ¶ 2.

However, the parties dispute the applicability of two enhancements. Probation argues two additional levels should be added pursuant to U.S.S.G. §2D1.1(b)(11) because the offense involved bribery of a law enforcement officer to facilitate the commission of a crime. PSR ¶ 32. In addition, Probation argues two levels should be added pursuant to U.S.S.G. §2D1.1(b)(16)(C) because Defendant had an aggravating role in the offense and was directly involved in the importation of a controlled substance. PSR ¶ 33. Altogether, Probation calculates Defendant's total adjusted offense level as 43. *Id.* ¶ 42. The Government agrees with Probation's calculations. Gov't Mem. at 4.

7

Defense counsel disputes the application of both the two-level enhancement for bribery of a law enforcement official and the two-level enhancement for importing a controlled substance as a defendant with an aggravating role because they are inconsistent with the stipulations in the plea agreement. Def. Mem. at 3; Plea Agreement ¶ 2. As such, defense counsel maintains Defendant's total adjusted offense level is 39. Def. Mem. at 3.

As stated, the Government agrees Probation correctly included the bribery and importation enhancements based on the facts of the case and therefore agrees the correct total adjusted offense level is 43. Gov't Mem. at 4. However, the Government acknowledges these enhancements were not included in the plea agreement and asserts it will abide by the calculations contained in that agreement. Gov't Mem. at 4. The Government requests the Court adopt Probation's calculations, which it asserts are correct, while imposing a sentence below both the Guidelines range contemplated in the plea agreement and calculated by Probation. *Id.*

Defendant has no prior convictions. PSR ¶¶ 43-45. As such, he has a criminal history score of zero and a criminal history category of I. *Id.* ¶ 45. All parties agree with these calculations. Def. Mem. at 9; *see generally* Gov't Mem. at 4.

A criminal history category of I and a total adjusted offense level of 43, as calculated by Probation and the Government, results in a Guidelines imprisonment term of life. U.S.S.G. Ch. 5 Pt. A; *see also* PSR ¶ 75.

A criminal history category of I and a total adjusted offense level of 39, as calculated by defense counsel and as reflected in the plea agreement, results in a Guidelines imprisonment range of between 262 and 327 months. U.S.S.G. Ch. 5 Pt. A; Def. Mem. at 2; Plea Agreement ¶ 2.

The Court agrees with the calculations of Probation and the Government and adopts their calculations in full, but acknowledges the lower range contemplated and stipulated to in the plea agreement.

In its sentencing submission, Probation recommended a sentence of 120 months of custody, a significant downward departure from the Guidelines range, and payment of the $100.00 Special Assessment. Probation Recommendation at 1, ECF No. 62-1. Also in its submission, Probation did not recommend a term of supervised release because of Defendant's likely deportation upon completion of his custodial sentence and his lack of connections to the United States. *Id.* However, because this recommendation was premised on the incorrect assumption that the Government would submit a letter pursuant to U.S.S.G. §5K1.1, Probation amended its position at the sentencing hearing to recommend a term of imprisonment of 262 months followed by the statutorily required five years of supervised release. Probation does not recommend the Court impose a fine, as Defendant appears unable to pay such a fine. *Id.*

Defense counsel recommends a sentence of 120 months of custody, a significant downward variance from the Guidelines range. Def. Mem. at 3, 14.

Defense counsel argues a significant downward variance from the Guidelines range is warranted given: (1) Defendant's background, highlighting in particular the extreme poverty Defendant endured as a child in Colombia and his efforts to provide for his family beginning as a child, which, defense counsel asserts, led to his eventual work for the FARC, *id.* at 3-4; (2) his early acceptance of responsibility[1] and remorse, *id.* at 5-7; (3) the lower sentences given to other

---

[1] As explained below, the Government argues Defendant's attempts to fight his extradition undermine any assertion that he was remorseful and accepted responsibility earlier. Gov't Mem. at 6. However, defense counsel argues Defendant's legal battles in Colombia should not be so interpreted. Defense counsel explains Defendant's Colombian counsel mistakenly advised Defendant he would not be subject to extradition because he was a beneficiary of a peace treaty signed between Colombia and the FARC. Def. Mem. at 2; *see also* Gov't Mem. at 2; PSR ¶ 26. As a result, he spent six years in prison attempting to have his case resolved in Colombia. Def. Mem. at

9

members of the conspiracy, discussed in detail *infra* Part II-F, *id.* at 7-9; (4) the lack of deterrent effect a lengthy sentence would have on Defendant, who has no prior criminal convictions and who is now considered a threat by his former DTO, *id.* at 9-11; (5) the inhumane conditions of confinement Defendant endured while in custody at La Picota jail in Colombia during the Covid-19 pandemic, *id.* at 11-12; (6) his status as a deportable alien, specifically noting Defendant's alien status is already an additional punishment because he is unable to see his family and renders him ineligible for many benefits available to other incarcerated individuals, including the opportunity to earn credits under the First Step Act for the Bureau of Prisons' early release programs, *id.* at 12-14; and (7) the fact that defendants charged with drug trafficking crimes in federal court are often granted downward variances, highlighting a 2023 United States Sentencing Commission report indicating 41% of federal defendants charged with drug trafficking crimes were granted a downward variance that year, *id.* at 14; *see also* ECF Nos. 66-5, 66-6.

The Court has read and considered the letters submitted by Defendant's loved ones and supporters, ECF Nos. 69, 69-1; the certificates of course completion at the Metropolitan Detention Center, ECF No. 69-1; the letters and exhibits detailing Defendant's assistance, ECF Nos. 66-1, 66-2; Defendant's high school diploma, ECF No. 66-3; and the Colombian Secretary of Education's acknowledgment of Defendant's commitment to education while incarcerated, ECF No. 66-4. The letters submitted by Defendant's loved ones describe him as a selfless, caring man who has dedicated his life to providing for his family. *See* ECF Nos. 69, 69-1. These letters, which were written by Defendant's mother, father, brother, partner, and children,

---

2. Had he been correctly advised, defense counsel asserts, Defendant would have requested to be transferred to the United States following his arrest. *Id.*

10

describe a man who is deeply ashamed of, and takes full responsibility for, his actions. *Id.* They urge the Court to give Defendant a second chance to allow him to return to his family. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a sentence of 240 months of imprisonment. Gov't Mem. at 5.

While the Government recognizes Defendant's difficult upbringing, it argues this does not mitigate his offense, which involved organizing and profiting from numerous, large shipments of cocaine. *Id.* Similarly, the Government does not believe Defendant's claim of remorse is a mitigating factor, as he fought extradition from Colombia for six years before his efforts failed and he was extradited to the United States. *Id.* at 6. Additionally, as discussed in more detail *infra* at Part II-F, the Government disagrees that a sentence significantly below the Guidelines range is necessary to avoid unwarranted sentencing disparities. *Id.* at 7-8. However, the Government acknowledges Defendant's acceptance of responsibility and post-arrest conduct is mitigating and warrants a modest downward variance to 240 months of imprisonment. *Id.* at 6.

The Government argues a sentence of 240 months of imprisonment, as opposed to the 120 months recommended by defense counsel, is appropriate because it sends a message that U.S. drug laws will be enforced and those who conspire to traffic and distribute drugs will face serious consequences, particularly in cases involving international trafficking with amounts as staggering as 20,000 kilograms of cocaine. *Id.* at 7.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

11

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation notes an upward departure may be warranted pursuant to Application Note 27(B) of U.S.S.G. §2D1.1. PSR ¶ 89. That application note reads as follows:

> In an extraordinary case, an upward departure above offense level 38 on the basis of drug quantity may be warranted. For example, an upward departure may be warranted where the quantity is at least ten times the minimum quantity required for level 38. Similarly, in the case of a controlled substance for which the maximum offense level is less than level 38, an upward departure may be warranted if the drug quantity substantially exceeds the quantity for the highest offense level established for that particular controlled substance.

The minimum quantity required for level 38 is 450 kilograms of cocaine. U.S.S.G. §2D1.1(c)(1). Defendant stipulated to being responsible for at least 20,000 kilograms of cocaine. Plea Agreement ¶ 2. This is over ten times the minimum quantity required for level 38.[2]

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defense counsel argues sentencing Defendant within the Guidelines range would result in sentence disparities among defendants involved in the same conspiracy. Def. Mem. at 7.

---

[2] Probation twice indicates that Defendant is responsible for 9,600 kilograms of cocaine. PSR ¶ 27; Probation Recommendation at 1, ECF No. 62-1. It is not clear where Probation got this figure, as elsewhere in the PSR Probation correctly notes Defendant is accountable for at least 20,000 kilograms of cocaine, the amount stipulated to in the plea agreement. PSR ¶ 8; Plea Agreement ¶ 2. Although the 9,600 kilogram figure appears to be a mistake, both 9,600 kilograms and 20,000 kilograms are over ten times the minimum quantity required for an offense level of 38, rendering the mistake harmless.

Specifically, defense counsel draws the Court's attention to three other individuals involved in FARC-related drug trafficking—characterized by defense counsel as Defendant's co-conspirators—who received sentences far below Defendant's recommended Guidelines range: Luis Eduardo Carvajal Perez, also known as "Rambo," who was the Supreme Commander of the FARC in the region in which Defendant operated; Carlos Adrian Betancourt Bedoya, also known as "JJ," who defense counsel asserts purchased the majority of the cocaine shipped by Rambo for resale in Central America; and Polivio Milton Rosero Mera, also known as "Leonidas," who owned two laboratories that produced cocaine for the FARC and others involved in drug trafficking. *Id.* at 7-8. Defense counsel explains Rambo received a sentence of 94 months. *Id.* at 8. JJ received a sentence of 40 months. *Id.* Leonidas received a sentence of 156 months. *Id.* To avoid unwarranted sentencing disparities with these individuals similarly involved in FARC-related drug trafficking, defense counsel argues, a sentence well below the Guidelines range is warranted in this case. *Id.* at 8-9.

The Government disagrees with defense counsel's assertion that these three sentences suggest Defendant should be sentenced well below the Guidelines range. Gov't Mem. at 7. The Government argues Rambo's offense level calculation should have been higher, therefore resulting in a higher Guidelines range. *Id.* Nevertheless, the Government does acknowledge, even with the Guidelines range applied by the district court in Rambo's case with which the Government takes issue, Rambo received a 42.8% downward variance. *Id.* As for Leonidas, the Government again acknowledges he received a 34% downward variance from his Guidelines range but argues this is still significantly less of a variance or departure than what defense counsel requests. *Id.* The Government also argues certain facts about JJ's case make it impossible to compare his sentence with that of Defendant's. *Id.* at 8.

13

The Court appreciates the disparities arguments raised by the parties, and recognizes other individuals involved in FARC-related drug trafficking, including those who played significant roles such as Rambo, received sentences below their recommended Guidelines ranges. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case.

## IV. Conclusion

For the reasons set forth above, the Court imposes a sentence of 240 months of imprisonment to be followed by five years of supervised release with both standard and special conditions. Forfeiture is ordered in accordance with the Order of Forfeiture. ECF No. 61. The Court also orders a $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 62, and addendum thereto, ECF No. 63, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion and imposes the standard and special conditions of release proposed by the Probation Department.



SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 20, 2024
Brooklyn, New York